In the Matter of the Petition of PEO-PLES NATURAL GAS COMPANY for Authority to Increase Rates for Gas Utility Service in Minnesota.

Nos. C5–84–875, C9–84–913, C0–84–914, C8–84–921 and C6–84–934.

Court of Appeals of Minnesota.

Dec. 4, 1984.

Robert S. Lee, Mackall, Crounse & Moore, Minneapolis, Lawrence G. Acker, LeBoeuf, Lamb, Leiby & MacRae, Washington, D.C., for appellants, The Hanna Mining Company, Erie Mining Company and Hibbing Taconite Joint Venture.

Warren M. Yalowitz, Inland Steel Company, Chicago, Ill., for Inland Steel Co.

James J. Ryan, Steer, Strauss, White & Tobias, Cincinnati, Ohio, for relators, Eveleth Taconite Company and Reserve Mining Company.

James W. Sanders, Cleveland, Ohio, for Oglebay Norton Co.

Thomas N. Wright, Omaha, Neb., for Peoples Natural Gas Co.

Elmer B. Trousdale, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, for Peoples.

Philip Crowley, Council Bluffs, Iowa, for Peoples Natural Gas, a Division of Inter-North.

Randall D. Young, St. Paul, for MN Public Utilities Commission.

Jeffrey J. Strand, LeFevere, Lefler, Kennedy, O'Brien & Drawz, Minneapolis, for relator, United States Steel Corporation.

Hubert H. Humphrey, III, Atty. Gen., Karl W. Sonneman, Sp. Asst. Atty. Gen., St. Paul, for respondent, MN Public Utilities Commission.

Susan W. Rester, Craig R. Anderson, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae MN Dept. of Public Service.

Heard, considered and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

Peoples Natural Gas Company (Peoples), a division of InterNorth, Inc., petitioned the Minnesota Public Utilities Commission (Commission) to increase its rates for retail natural gas service within Minnesota by approximately $2,622,000. The Commission issued a decision on June 1, 1983, allowing Peoples to increase its rates on an interim basis, subject to refund, by $2,035,000 for gas service to all classes of customers. By orders dated February 8, April 26, and June 22, 1984, the Commission allowed Peoples a final increase of only $276,000.

Appeals were filed by Hanna Mining Company, Hibbing Joint Venture, Erie Mining Company, United States Steel Corporation, Eveleth Taconite Company, and Reserve Mining Company regarding the refunding procedure followed by the Commission, and by Peoples contesting the denial of the full increase. All appeals were consolidated. We affirm.

## FACTS

*1. Peoples' appeal*

Peoples is an operating division of InterNorth, Inc., distributing natural gas at retail to customers in Minnesota and other states. Northern Natural Gas Company (Northern), a sister division of InterNorth and Peoples' wholesale supplier, operates an extensive pipeline system through central United States and is regulated by the Federal Energy Regulatory Commission (FERC).

On April 8, 1983, Peoples filed a petition with the Commission pursuant to Minn. Stat. § 216B.16 (1982) for increased gas rates, to produce an additional $2,622,000 in annual gross revenue. Pursuant to Minn. Stat. § 216B.16, subd. 3 (1982), the Commission authorized and established Peoples' interim rates for Peoples to collect $2,035,000 of additional annual revenues, subject to refund, pending a final order.

In 1981, InterNorth constructed two extensions from the Northern Natural Pipeline to serve Hibbing Taconite Co. and Inland Steel Company. Each extension consisted of a lateral pipeline and a town border station (which consisted of a measuring and regulating facility). The lateral pipelines connected the existing Northern Natural Pipeline with the town border stations. The total cost was $2.6 million ($2.3 million to build the lateral pipeline and $313,000 to build the measuring and regulating facilities).

InterNorth charged the entire cost of the extensions to Peoples. Construction was the responsibility of Northern, and legal title is in Northern's name. The cost of construction was to be paid by Peoples through a "contribution in aid of construction" to Northern. Peoples included in their requested rate base a return for the contributions to Northern. The Commission approved the inclusion of the contribution in Peoples' rate base in a 1981 rate case.

In the present 1983 rate case, a hearing examiner recommended the contributions be excluded from Peoples' rate base. The Commission rejected the recommendation, noting no additional evidence had been presented. It simply summarized what it had done in the 1981 case and reaffirmed its original decision. In its February 8, 1984, Findings of Fact, Conclusions of Law and Order, the Commission stated:

> The Commission considered this issue in Peoples' first rate case, G–011/GR–80–850. *No additional evidence has been presented in the current proceeding.* In that case, the Commission found that Northern's applications to FERC for

authority to construct and operate the facilities necessary to establish new delivery points for Peoples for the service of two taconite customers were filed on the basis that Northern would be reimbursed by Peoples for the cost of constructing the new facilities. The Commission also found that the FERC certificates of public convenience and necessity authorizing that construction were granted on the basis that Northern *would be reimbursed by Peoples for the cost of construction. As a consequence, the Commission found that the cost of constructing the new facilities could not be included in Northern's FERC rate base and should be included in Peoples' Minnesota rate base. The Commission reaffirms its original decision on this issue in this proceeding.*

(Emphasis added.)

A dissent was filed, claiming fourteen miles of pipeline does not constitute an appurtenance to the measuring and regulating facilities, and urging that this was "a blatant attempt by the parties to manipulate the Minnesota rate base and resultant rates."

Upon reconsideration, the Commission issued an order dated April 26, 1984, reversing its prior decisions by eliminating the costs of the pipeline extensions from Peoples' rate base. The Commission concluded that the Federal Energy Regulating Commission Tariff, pursuant to which these costs were assigned to Peoples, did not cover such costs. On the other hand, the cost of constructing the measuring and regulating facilities at the town border station was properly allowable in the rate base. The Commission stated in its April 26, 1984, Order After Reconsideration:

> While the evidence may be similar to that before it in the earlier case, the Commission finds that upon re-examination of the record in this proceeding it must question the inferences drawn from such evidence in its initial decision. *The Commission now finds that it gave inadequate weight to the relationship between Peoples and Northern and the*

*record evidence of how that relationship affected the contributions in aid of construction. Moreover, it had not adequately considered the meaning of "appurtenances" in its prior decisions. Upon reconsideration, taking these factors into account, the Commission reverses its prior decisions regarding these contributions in aid.*

(Emphasis added.)

Peoples then filed a Petition for Further Hearing asking the Commission to receive additional testimony and evidence. By order of May 3, 1984, the Commission denied Peoples' petition. Peoples appeals from the Commission's orders of April 26 and May 3, 1984.

### 2. *Taconite appeal*

Peoples' customers in Minnesota are divided into six classes: general service, small volume firm, small volume interruptible, large volume firm, large volume interruptible and taconite. The interim rate increase of $2,035,000 was allocated to each customer class based on an equal percentage of nongas costs. Peoples had requested the entire amount of the proposed general rate increase and the interim rate increase be assigned to Peoples' general service class customers only.

In its order of February 8, 1984, the Commission determined that the general service class would be allocated a rate increase of only $829,000 in contrast to the $2,622,000 sought by Peoples and the $2,035,000 authorized as an interim rate increase by the Commission. (The $829,000 was reduced to $276,000 after the removal from the base rate of the unamortized contributions in aid of construction for the pipeline extensions). No other class rate was increased. The Commission did not refund to the other classes, however, all of the interim increases they had paid even though the Commission found the nongeneral service class rates should not be increased. Instead, it ordered the difference between the increase in revenues allowed in the interim and the increase in revenues ultimately allowed to be refunded to *all*

customer classes, including the general service class, to parallel the manner in which the interim rate increase was distributed to customer classes. A partial stay of Peoples' refund obligation was granted by the Commission on June 28, 1984.

### ISSUES

1. Was the Commission's decision to disallow the contributions for construction of the pipeline extensions supported by substantial evidence?

2. Did the Commission properly deny Peoples' Petition for Further Hearing on the grounds the proposed evidence would be cumulative and that Peoples was afforded a full opportunity to present such evidence during the rate case proceeding?

3. Did the Commission unjustly allocate the interim rate increase to all customer classes?

4. Did the Commission misapply Minn. Stat. § 216B.16 in denying the taconite customers a refund when the final rate increase was less than its interim rate increase?

### ANALYSIS

#### *Scope of Review*

■ The Minnesota Administrative Procedure Act provides several standards of review in appeals from administrative agencies. Minn.Stat. § 14.69 (1982). Agency decisions "enjoy a presumption of correctness, and deference should be shown by the courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977).

■ In reviewing decisions of an agency, the substantial evidence test is applied. *Signal Delivery Service v. Brynwood Transfer Co.*, 288 N.W.2d 707, 710 (Minn. 1980). For Minnesota's interpretation of the substantial evidence test, see *Reserve Mining* at 825.

■ An agency's findings can also be rejected when they are arbitrary and capricious. "An agency finding is arbitrary and capricious when its determination represents its will and not its judgment." *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 351 (Minn.Ct.App.1983), *pet. for rev. denied* (Minn. April 24, 1984).

## I.

### 1. *Substantial evidence*

■ The Commission eliminated the cost of constructing the pipeline extensions from Peoples' intrastate rate base, concluding that the only contribution in aid of construction allowable was the cost of constructing the measuring and regulating facilities at the border station. The Commission's order was supported by substantial evidence.

First, FERC Tariff Sheet No. 56 requires that a "Gas [distribution] Utility will reimburse Northern for the total actual cost of constructing the measuring and regulating facilities and appurtenances thereto * * *." Based on this language, the Commission could reasonably conclude that fourteen miles of pipeline between the existing Northern pipe and the new town border station is not an "appurtenance," and that Peoples was not required to make contributions in aid of the construction of the pipeline extensions.

The Commission also based its decision on several letters introduced into evidence which provided an insight into the relationship between Peoples and Northern. In a letter addressed to Northern, a representative of Peoples stated: "We believe Northern should install the facilities at no contribution as was done when we served the original taconite plants." In a letter from InterNorth, an investment specialist stated: "There are several nonfinancial reasons for making this investment in Minnesota. Peoples is currently earning above the allowable rate of return on its Minnesota rate base. Therefore, Peoples is hopeful that making additional investments in Minnesota will forestall attempts by the regulatory

agency to reduce rates." In addition, a United States Steel witness recommended the deletion of contributions from Peoples' rate base because all previous similar pipelines to the taconite producers had been paid for by Northern and included in its rate base. In looking at this evidence, the Commission concluded that InterNorth manipulated the rate system to inflate Peoples' Minnesota rate base.

■ The Commissioner's conclusion that Peoples was not required to make contributions in aid of the construction under FERC tariffs, and its concern regarding the alleged attempt by InterNorth to manipulate the rate system were supported by substantial evidence in the record. The investment properly should have been assigned to Northern, not to Peoples.

### 2. *Res Judicata*

■ Peoples argues that the principles of res judicata and collateral estoppel bar reconsideration of the Commission's prior inclusion of the contributions in aid of construction in the rate base. This argument is without merit.

Minn.Stat. § 216B.25 (1982) provides:

The commission may at any time, on its own motion or upon motion of an interested party, and upon notice to the public utility and after opportunity to be heard, rescind, alter or amend any order fixing rates, tolls, charges or schedules, or any other order made by the commission, and may reopen any case following the issuance of an order therein, for the taking of further evidence or for any other reason. Any order rescinding, altering, amending or reopening a prior order shall have the same effect as an original order.

*Id.* Through the enactment of section 216B.25, the legislature has altered the traditional res judicata principles. *See* Restatement of Judgments 2d § 83, comment a. This court has noted: "An administrative agency concerned with furtherance of the public interest is not bound to rigid adherence to precedent." *Peoples Natural*

*Gas Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 352 (Minn. Ct.App.1983).

### 3. *Reasoned Explanation*

■ Peoples claims the Commission's decision was arbitrary and capricious because it failed to provide a rational explanation of its change of policy. The Commission provided a reasoned explanation for its change in position.

In its earlier decisions, the Commission relied upon the fact that Northern's applications to the FERC had been filed on the basis that Northern would be reimbursed by Peoples and that the FERC certificates of public convenience and necessity authorizing the construction of the pipeline extensions had been issued on the basis that Northern would be reimbursed by Peoples. The Commission now concluded that the reimbursement by Peoples was an attempt to increase Peoples' Minnesota rate, and that the FERC orders were not conditioned upon Northern receiving contribution in aid of construction. It restated the facts it had relied upon in the 1981 case, the conclusions it had drawn from them, and the reasons why it was now drawing different conclusions.

### 4. *Taking of Property*

■ Peoples also argues that the investment is unrecoverable unless the utility is permitted to earn a fair rate of return for devoting the pipeline to serve the public. The Commission's decision only prevents the investment from being included in Peoples' rate base. Northern can still make a request to include the contributions in its rate base.

### II.

■ The Commission denied Peoples' Petition for Further Hearing because the "evidence Peoples proposes to introduce appears to be merely cumulative and would be unlikely to change the Commission's finding that the contributions in aid should be excluded from Peoples' Minnesota rate base" and because "Peoples was afforded a full opportunity during the rate case proceeding to put on the record any evidence relating to this issue that it deemed necessary or appropriate * * *."

Peoples relies on *Hatch v. Federal Energy Regulatory Commission,* 654 F.2d 825 (D.C.Cir.1981), in arguing that the Commission's reversal of its prior decisions without an additional hearing deprived Peoples of due process. *Hatch* involved a situation where the FERC attempted to apply a new standard of proof. In this case, however, there has been no change in standard. The Commission only revised the legal significance of the facts before it.

> In those cases in which courts have not required the agency to allow the litigants to submit new evidence relevant to the newly announced standard, either actual notice of the operative standard existed at the time of the first hearing, or *an additional opportunity to submit evidence was not deemed critical because the agency merely revised the legal significance of the same kind of facts.* But when, as here, the change is a qualitative one in the nature of the burden of proof so that additional facts of a different kind may now be relevant for the first time, litigants must have a meaningful opportunity to submit conforming proof.

*Id.* at 835 (emphasis added) (citations omitted).

The issue of contributions in aid of construction for the lateral pipeline extensions was raised and argued in the rate proceeding. No new standard was created. The Commission re-examined the facts and "revised the legal significance" of the same facts. The Commissioner's refusal to conduct a hearing for the taking of additional evidence was not a denial of due process.

### III.

■ The Commission elected to impose the interim rate increase proportionately to all customer classes of Peoples even though Peoples had requested that the entire amount of the proposed rate increase

be assigned to general service class members only.

Minn.Stat. § 216B.16, subd. 3 (1982), provides for the calculation of interim rates, prohibiting rate design changes in setting interim rates. The Commission determined that, in order to maintain the existing rate design, the interim increase should be apportioned among all customer classes in equal proportion to the class's contribution to nongas costs of Peoples, rather than apply that increase only to the general services class. The Commission's argument is consistent with its policy statement issued April 14, 1982, which requires interim rates "to be made across the board to all customers such that the final rates are prospective only." This policy is in keeping with Section 216B.16, subd. 3, and is a reasonable way to evenly distribute additional costs while final rates are determined. *See In re Petition of Inter City Gas Corp.*, 358 N.W.2d 692, 695 (Minn.Ct. App.1984).

## IV.

■■■■ The Commission ordered a refund of excess revenues collected during the interim rate period to be made on a basis that paralleled the interim rate increase. The taconite companies claim the result is a transfer of funds between the general service class customers and nongeneral service class customers, thereby temporarily increasing above a just and reasonable level the rates of all nongeneral service class members.

The refunding provisions of the statutes do not specify the procedure to be followed when refunding excessive interim rates. *See* Minn.Stat. § 216B.16, subd. 3 (1982). Through the refunding procedure adopted, the Commission attempted to return interim rates to all rate payers who paid those rates, and to apply the new, final rates prospectively only. The adoption of refunds based on individual rates may result in under-recovery by the utility or the need to surcharge one or more classes in some cases. The need to maintain existing rate structures until new rates are adopted pro-

spectively in the final order, and the difficulties of basing refunds on individual rates in most cases support an across-the-board refund to all customers. For a further discussion of this issue, *see In re Petition of Inter City Gas Corp.*, 358 N.W.2d 692, 695 (Minn.Ct.App.1984).

We are aware of this court's recent decision in *In the Matter of the Petition of Continental Telephone Company of Minnesota, Inc.*, 358 N.W.2d 400 (Minn.Ct.App. 1984). We find that case to be distinguishable from the case at bar because in *Continental Telephone* interim rates had been calculated erroneously and on a basis other than proportional increases.

## DECISION

1. The Commission's decision to disallow contributions for constructing pipeline extensions in setting an intrastate rate base was supported by substantial evidence.

2. An evidentiary hearing is not required when the proposed evidence would be cumulative and there was a full opportunity to present such evidence during the rate case proceeding.

3. The Commission's policy of setting interim rates across the board to all customers is a reasonable way to evenly distribute additional costs while final rates are determined.

4. An across-the-board refund of excess revenues collected during the interim rate period is reasonable and in keeping with Minn.Stat. § 216B.16, subd. 3 (1982).

Affirmed.