In the Matter of the Petition of INTER–CITY GAS CORPORATION for Authority to Change its Schedule of Rates for Gas Service in Minnesota.

No. C9–84–1169.

Court of Appeals of Minnesota.

Dec. 4, 1984.

Hubert H. Humphrey, III, Atty. Gen., Karl Sonneman, Sp. Asst. Atty. Gen., St. Paul, for MN Public Utilities Commission.

Michael Bradley, Christopher K. Sandberg, Thomas J. Barrett, Sp. Asst. Attys. Gen., St. Paul, for Residential Utilities Div., Dept. of Public Service, & Dept. of Energy & Economic Development.

James D. Larson, Minneapolis, for Conwed Corp.

Samuel L. Hanson, Minneapolis, for Inter-City Gas.

John A. Knapp, Minneapolis, for Boise Cascade.

Heard, considered, and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

On June 10, 1983, Inter-City Gas Corporation (Inter-City) filed a petition for increased gas rates with the Minnesota Public Utilities Commission (the Commission) pursuant to Minn.Stat. § 216B.16 (1982 and Supp.1983). By order dated July 22, 1983, the Commission authorized Inter-City to collect an increase of $2,737,100 through interim rates pending its final determination on the petition. By orders dated April 10, 1984, and June 4, 1984, the Commission allowed Inter-City a final increase of $2,787,288. Conwed Corporation (Conwed) appeals those orders, alleging that the Commission has improperly denied it a refund of interim rates. We affirm.

### FACTS

Inter-City provides natural gas service to 20,000 customers in northern Minnesota. Its largest single customer, Boise Cascade Corporation, receives a special contract rate. Its remaining customers are divided into classes of general service, interruptible, and large volume-firm, based upon the characteristics of the customer's gas usage. The large volume service rate schedule, used by Conwed, is available to customers with firm requirements in excess of 200,000 cubic feet (mcf2) per day, who agree to contract for predetermined demand levels.

On June 10, 1983, Inter-City filed its petition to increase gas rates. The Commission suspended the proposed rates, but, pursuant to Minn.Stat. § 216B.16, subd. 3 (1982), ordered interim rates for Inter-City that would generate $2,737,100 additional annual revenues. The interim rate increase was accomplished through an equal percentage increase in all nongas costs for each customer class.

The Commission's final order authorized Inter-City to increase its rates $2,787,288. The Commission ordered no refunds since the revenues authorized by the final order exceeded the revenues collected under the interim rates. The final order made several changes in the rate design. It called for no rate increase for the large volume class. This effected a decrease from the interim rate and the previous rate design.

Conwed petitioned for amendment or reconsideration of the final order. It contended that the Commission should order a refund for large volume customers since their final rates were below their interim rates. The Commission denied Conwed's petition, finding no refund was required since overall final rates exceeded the overall interim rates.

### ISSUES

1. Did the Commission exceed its statutory authority in its policy for setting interim rates?

2. Did the Commission err in deciding Inter-City did not have to make refunds to a customer class whose final rate increase was less than its interim rate increase, where overall final rates exceeded overall interim rates?

### ANALYSIS

■■■ 1. The Commission's policy is to calculate interim rates by adding to the existing rate schedules for all customer classes an adjustment equal to the overall interim increase percentage. When the Commission allocates costs between utility customers and balances various factors to achieve a fair and reasonable allocation of these costs, it operates in a legislative capacity. *City of Moorhead v. Minnesota Public Utilities Commission*, 343 N.W.2d 843, 846 (Minn.1984). There is a limited scope of review in challenges to Commission rate allocations. When acting in this capacity, the Commission's decisions will be upheld unless shown to be in excess of statutory authority or resulting in unjust, unreasonable, or discriminatory rates by clear and convincing evidence. *Reserve Mining Co. v. Minnesota Public Utilities Commission*, 334 N.W.2d 389, 392 (Minn. 1983) (quoting *St. Paul Area Chamber of Commerce v. Minnesota Public Service Commission*, 312 Minn. 250, 262, 251 N.W.2d 350, 358 (1977)).

Minn.Stat. § 216B.16, subd. 3 (Supp.1983) provides for the calculation of interim rates:

Unless the commission finds that exigent circumstances exist, the interim rate schedule shall be calculated using the proposed test year cost of capital, rate base, and expenses, except that it shall include: (1) a rate of return on common equity for the utility equal to that authorized by the commission in the utility's most recent rate proceeding; (2) rate base or expense items the same in nature and kind as those allowed by a currently effective order of the commission in the utility's most recent rate proceeding; and (3) *no change in the existing rate design.*

*Id.* (emphasis added). Based on this statute, the commission issued a policy statement:

The Commission interprets that "no change in the existing rate design" applies to both the allocation of revenue responsibility among customer classes (or product and service categories) and the structure of the individual rates. Accordingly, interim rates should consist of the existing rate schedules with an interim rate adjustment equal to the overall requested interim increase percentage. This procedure will assure that consumption decisions will be made on the same basis as under existing rates and *will allow refunds if necessary, to be made across-the-board to all customers such that the final rates are prospective only.*

Statement of Policy on Interim Rates, April 14, 1982 (emphasis added). Prior to the establishment of the 1983 interim rates, the rates Inter-City charged were in effect from a 1981 rate increase petition, which was approved by Conwed. In its 1983 rate change petition, Inter-City proposed a change in the final rate design so that the large volume class, to which Conwed belongs, would receive a zero increase in final rates.

 Inter-City could not propose a zero increase for the large volume class for the interim rates because the statute prohibits rate design changes in interim rates and requires that all rate design changes be prospective only. *See* Minn.Stat. § 216B.16, subds. 3 and 5. By allocating the interim rate proportionately, the rate structure during the interim period and the relationship among all customer classes remain the same. The Commissioner's policy is a reasonable way to evenly distribute additional costs while final rates are determined.

2. The Commission argues that section 216B.16 does not require refunds to an individual customer class whose final rates are less than its interim rates if overall final rates exceed overall interim rates.

The refund provision is found in Minn. Stat. § 216B.16, subd. 3, which provides in part:

If, at the time of its final determination, the commission finds that the interim rates are in excess of the rates in the final determination, the commission shall order the utility to refund the excess amount collected under the interim rate schedule, including interest thereon which shall be at the rate of interest determined by the commission.

*Id.* "Rate design changes shall be prospective from the effective date of the new rate schedules approved by the commission." Minn.Stat. § 216B.16, subd. 5 (1982). The Commission construes these statutory sections as prohibiting retroactive changes in interim rates. The Commission has great discretion in determining the method of refunding excess interim rates:

We leave to the Public Service Commission the mechanics of determining the amount of refund which is due and the precise manner of its distribution.

*Northwestern Bell Telephone Co. v. State,* 299 Minn. 1, 30, 216 N.W.2d 841, 858–59 (1974).

The Commission, therefore, "will allow refunds, if necessary, to be made across the board to all customers such that the final rates are prospective only." *See* April 14, 1984 policy statement. The Commission contends that the term "rates" in the

refund section means overall rates. Conwed contends that the word "rates" means that individual class rates may be refunded if final class rates are lower than that class's interim rates.

■ If there is any ambiguity in a statute, the court must, in construing the language, look to the whole statute. *Town & Country Homes, Inc. v. Commissioner of Taxation,* 269 N.W.2d 7, 10 (Minn.1978). If interim rates were altered on the basis of final rate determinations, either Inter-City must make refunds from revenues to which it is entitled, or other classes of ratepayers must pay a surcharge to repay the overpaying class. This violates the clear language of subdivision 5 that rate changes shall be prospective only. Nor is it in keeping with the subdivision 3 mandate that interim rates contain no change in rate design.

■ Only if the Commission found that the overall final revenue increase for Inter-City was less than the interim increase, would Conwed and other customer classes be entitled to an across-the-board refund. *See In re the Petition of Peoples Natural Gas Co.,* 358 N.W.2d 684 (Minn.Ct. App.1984); *see also, Northwestern Bell Telephone Co. v. State,* 299 Minn. 1, 30, 216 N.W.2d 841, 858–59 (1974) (Not every customer who paid excessive rates pending appeal is entitled to a full or even a partial refund). We believe the Commission's refund policy is both reasonable and consistent with § 216B.16, subds. 3 and 5.

We are aware of this court's recent decision in *In the Matter of the Petition of Continental Telephone Company of Minnesota, Inc.,* 358 N.W.2d 400 (Minn.Ct.App. 1984). We find that case to be distinguishable from the case at bar because in *Continental Telephone* interim rates had been calculated erroneously and on a basis other than proportional increases.

### DECISION

The Commission's policy is in keeping with Minn.Stat. § 216B.16, subds. 3 and 5, and is a reasonable way to evenly distrib-

ute additional costs while final rates are being determined. The Commission's policy of refunding excess interim rates across the board to all customers proportionately is reasonable and consistent with Minn. Stat. § 216B.16, subds. 3 and 5.

Affirmed.