## Department of Highways, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued October 10, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Nelson M. Galloway,* Assistant Attorney General, with him *John R. Rezzolla, Jr.,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for Department of Highways, appellant.

*Miles Warner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Harold B. Bornemann,* with him *Josephine H. Klein,* for railroad, intervening appellee.

OPINION BY RHODES, P. J., January 21, 1958:

This is an appeal by the Department of Highways of the Commonwealth of Pennsylvania from an order of the Pennsylvania Public Utility Commission allocating certain costs of construction against the department in a project involving the reconstruction of a railway-highway grade separation structure.

The proceeding was initiated on November 29, 1950, when the Schuylkill County Motor Club filed a complaint with the commission alleging that the highway underpass carrying State Highway Traffic Routes 443 and 29 underneath the single track of the Lehigh and New England Railroad Company in West Penn Township, Schuylkill County, was dangerous and inadequate by reason of insufficient vertical and horizontal clearances and should be reconstructed for the safety, accommodation, service, and convenience of the public. After hearing on March 1, 1951, the commission, on

May 28, 1951, directed the department, with the cooperation of the railroad, to prepare plans and cost estimates for the alteration or reconstruction of the crossing below grade. At a further hearing held on November 26, 1952, the department presented its plans and cost estimates for the reconstruction of the bridge and the highway passing thereunder. At this time a witness for the department testified that no federal funds were available for this project. The cost estimate of the department for the bridge was $175,459.20, while the cost estimate of the railroad for the bridge alone was $128,148. The department on behalf of the Commonwealth agreed to assume the entire estimated cost of the highway construction, as distinct from the bridge, amounting to $181,641.05. Thus the total cost estimates were $357,100.25. On April 20, 1953, the commission, sustaining the complaint of the Schuylkill County Motor Club, issued its order approving plans prepared by the department and directing, inter alia, that the railroad pay the department $35,000 toward the cost of construction of the improvement. In this same order the commission disposed of the railroad's request that federal funds be used to defray the expense of the improvement by noting testimony of the department's witness that no such funds were available, and adding that the commission could not direct the department to utilize federal funds.

On May 8, 1953, the Lehigh and New England Railroad Company filed a petition for reconsideration and modification of the commission's order of April 20, 1953, in which it alleged that the assessment of $35,000 against the railroad was unjust and unreasonable, and in which it requested that the commission defer the effective date of the order until federal funds had been obtained for the improvement or, in the alternative, that the allocation against the railroad be greatly re-

duced or borne by other parties. This petition of the railroad was denied by the commission on July 13, 1953.

On January 8, 1955, the railroad filed a second petition for reopening and rehearing and modification of the commission's order of April 20, 1953, wherein the railroad had been assessed $35,000 of the cost of the improvement. In this second petition the railroad averred that subsequent to the commission's order of April 20, 1953, the department had applied for and was granted federal funds to defray one-half of the cost of the improvement involved in this proceeding. In its answer the department admitted that $320,000 of federal funds had been committed to this new and independent project as of May 12, 1954, but averred that the Federal Bureau of Public Roads was informed of the $35,000 assessment against the railroad at the time the use of federal funds was approved. The petition also set forth that removal, relocation, or alteration of its tracks had cost the railroad $6,829.19. The railroad contended that General Administrative Memorandum No. 325 of the Federal Bureau of Public Roads and regulations issued by it under the Federal-Aid Highway Act of 1944 precluded any assessment against the railroad where federal funds had been or were allocated.

On February 7, 1955, the commission, acting under the provisions of section 1007 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1397, directed that the complaint be reopened and that further evidence be received concerning the allocation of costs of the improvement project. A rehearing was held on April 1, 1955, at which it appeared that no agreement had been made covering this project between the railroad and the Bureau of Public Roads of the Department of Commerce or between the railroad and the

Department of Highways. At this rehearing it was established that the final cost of the subject improvement was substantially less than originally estimated, to wit, $304,681.54, compared with an estimate of $357,-100.25. It further appeared in the evidence that federal funds were used on the project, including the improvement involved in this proceeding, in the amount of $320,000 on the estimated cost of $640,000 following a bid of $596,140.57.

The commission thereafter issued its order of May 21, 1956, which is the subject of the present appeal. The commission therein stated that, in view of changed circumstances, including the fact that federal funds were ultimately obtained for the improvement and because of the reduction in actual cost below the original estimates, it would modify its original order of April 20, 1953, by relieving the railroad of the payment of $35,000 previously assessed against it. The commission refused to grant the requested reimbursement of the railroad for $6,829.12 representing track alteration costs.

On appeal to this Court the position of the department is that it is "unreasonable, arbitrary and capricious for the Commission subsequently to amend its order and put all the . . . cost of reconstruction upon the Commonwealth solely because the Commonwealth had, subsequent to the original . . . order, received Federal funds for the . . . reconstruction project . . ." It appears that the substance of appellant's complaint is that the commission allegedly used the allocation of federal funds as the sole factor in modifying its order of April 20, 1953, to the extent of relieving the railroad of payment of the $35,000 assessment. The department also attempts to raise the issue of whether the commission in allocating costs is bound by alleged restrictions in the federal law and regulations against assessing

any costs against the railroad in such projects as here involved. However, as hereinafter noted, this issue is not properly raised and is not before us.

We think this appeal is ruled by our decision in the recent case of *Department of Highways v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 376, 116 A. 2d 855, allocatur refused 179 Pa. Superior Ct. xxvii, where, as here, the Department of Highways alleged that the commission erred in allocating costs between a railroad and the Commonwealth in rail-highway crossing projects in which federal funds were used. There the department contended that the commission in allocating costs erred as follows (page 383 of 179 Pa. Superior Ct., page 858 of 116 A. 2d) : "(1) In considering the source of funds to be used by the department; (2) in arbitrarily making the source of funds the sole basis of its cost allocations; (3) in allocating the costs as to the railroad to conform with the General Administrative Memorandum No. 325." After reviewing the law[1] granting broad power to the commission to allocate and assess costs in rail-highway crossing improvement or elimination projects, we stated (pages 384, 385 of 179 Pa. Superior Ct., page 859 of 116 A. 2d) : "The present orders, in so far as they relate to allocation of costs, are well within the commission's statutory power. Under the circumstances, in making allocations, it was proper for the commission to recognize the fact that federal funds were to be used in each of the projects, and to consider the conditions which might be applicable to the use of such funds.

"The commission could also consider, in the light of present day conditions, the general purpose and cir-

---

[1] Sections 409, 411, Act of May 28, 1937, P. L. 1053, 66 PS §§1179, 1181. Section 409 has been amended by the Act of September 28, 1938, Sp. Sess., P. L. 44, §1, and by the Act of May 25, 1945, P. L. 1012, §1.

cumstances underlying the grant of federal funds for such projects, including the financial position of the railroads and the relative benefit to the railroads as compared to that accruing to users of motor highways."

On the present appeal it does not appear as a matter of law that the commission, in amending its original order, acted solely on the basis of the fact that federal funds were later used. Moreover, it does not appear that the commission considered that it was bound by federal regulation to relieve the railroad of liability to the extent that it did. As we said in the former appeals (page 386 of 179 Pa. Superior Ct., page 859 of 116 A. 2d) : "It may be that the proposed use of federal funds was the decisive factor in the cost allocations made by the commission. In any event, the allocations were within the commission's general powers, and we cannot say as a matter of law that the commission did not consider all factors, or that it gave undue weight to any one factor in apportioning the costs."

Our statement in the former appeals is applicable to the other issue in appellant's argument (page 386 of 179 Pa. Superior Ct., page 859 of 116 A. 2d) : "These appeals do not raise the question whether the commission was bound to consider the use of federal funds, nor do they raise the question whether the commission is bound by any alleged restriction where federal funds are used. These are not cases where the commission has refused to consider the use of federal funds or where it allocates costs in violation of alleged restrictions in the use of such funds."

The commission's modification of its order of April 20, 1953, is based upon substantially altered factors which include the ultimate use of federal funds and a cost materially less than the original estimate. Further-

more, the commission refused to relieve the railroad of payment of $6,829.12 track relocation costs.

The commission acted within its powers under section 1007 of the Public Utility Law, 66 PS §1397, in amending its order of April 20, 1953. The power of the commission to rescind or amend an order under this provision is clear. See *Day v. Public Service Commission,* 312 Pa. 381, 384, 167 A. 565, affirming 107 Pa. Superior Ct. 461, 164 A. 65. Such amendment or rescission of its orders by the commission is, of course, subject to the requirement that there be adherence to the fundamental principles of fairness and to the constitutional guarantees of due process. *West Penn Power Company v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 123, 131, 100 A. 2d 110. We find no violation in this respect.

The order of the commission is affirmed.