**KENTUCKY WEST VIRGINIA GAS COMPANY, and Equitable Gas Company, Plaintiffs,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Defendant.**

Civ. A. No. 89–0124.

United States District Court, M.D. Pennsylvania.

April 27, 1989.

On Motion For Reconsideration and Rehearing Sept. 6, 1989.

---

William A. Nogel, Randall C. Smith, Ross, Marsh, Foster Myers and Quiggle, Washington D.C., Charles E. Thomas Jr., Thomas I. Niesen, Thomas and Thomas, Harrisburg, Pa., for plaintiffs.

Lawrence F. Barth, Pa. PUC—Law Bureau, Harrisburg, Pa., for Pa. PUC.

Philip F. McClelland, Asst. Consumer Advocate, Irwin A. Popowsky, Sr. Asst. Consumer Advocate, David Barasch, Consumer Advocate, Office of the Atty. Gen., Harrisburg, Pa., for Consumer Advocate—intervenor.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction and Background.*

Before the court is the motion of defendant, Pennsylvania Public Utility Commission (PUC), to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). Defendant contends that the action is barred by the doctrine of claim preclusion, formerly known as res judicata.[1] Plaintiffs are challenging

---

1. Normally, claim preclusion is an affirmative defense to be raised in the answer but defendant has relied upon *Iacaponi v. New Amsterdam Casualty Co.,* 379 F.2d 311 (3d Cir.1967) (per curiam), to present the defense in a motion to dismiss, since it contends the issue "appears on the face of the complaint." *Id.* at 312. We are not as convinced of that as defendant but plaintiffs have not "made an issue of the manner in which the res judicata issue has been raised," *id.,* and it appears that a decision can be made from the evidentiary material supplied. But,

on federal constitutional and statutory grounds a 1988 PUC rate making order in a so-called section 1307(f) proceeding under state utility law. The order refused Equitable the recovery of some $10.2 million in alleged variable commodity costs incurred during a thirteen month period from July of 1983 through July of 1984. This case is related to other lawsuits plaintiffs had previously brought before this court and the Third Circuit Court of Appeals making a similar challenge to other PUC section 1307(f) orders. *See Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n*, 620 F.Supp. 1458 (M.D. Pa.1985) (dismissing complaint concerning a 1985 PUC section 1307(f) order on abstention grounds), *rev'd*, 791 F.2d 1111 (3d Cir. 1986), (reversing and remanding for a decision on the merits), *on remand*, 650 F.Supp. 659 (M.D.Pa.1986), *aff'd*, 837 F.2d 600 (3d Cir.) (*Kentucky West I*), cert. denied, —— U.S. ——, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). *See also Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n*, 862 F.2d 69 (3d Cir.1988), (*Kentucky West II*) (involving a challenge to a 1986 PUC section 1307(f) order), *rev'g*, No. 86–1380 (M.D.Pa. July 13, 1987). Factual details of the regulatory scheme and of prior proceedings can be found in *Kentucky West I* and *Kentucky West II*. We reiterate here only those facts pertinent to the claim preclusion defense.

Plaintiff, Kentucky West Virginia Gas Co. (Kentucky West), a wholly owned subsidiary of Equitable Resources, Inc., is an interstate pipeline company engaged in the sale of natural gas in interstate commerce. Plaintiff, Equitable Gas Company (Equitable), a division of Equitable Resources, Inc., is a Pennsylvania retailer of natural gas subject to the authority of the PUC. In a 1985 section 1307(f) proceeding dealing with Equitable's revenues and expenditures from July of 1983 through December of 1984, the PUC, by order dated August 31, 1985, disallowed recovery by Equitable of $14.3 million in purchased gas costs for gas

bought from Kentucky West, one of Equitable's interstate pipeline suppliers. The PUC reasoned that Equitable could have purchased the gas more cheaply from other suppliers. In the parlance of the state statute, the PUC had decided that Equitable had not followed a "least cost fuel procurement policy." *See* 66 Pa.C.S. § 1318.

Thereafter, plaintiffs filed a complaint in this court on October 11, 1985, challenging the PUC's action on the basis, in part, of the commerce clause, the supremacy clause, and the first, fifth and fourteenth amendments. The thrust of the argument at that time before this court in relation to the supremacy clause claim was that the PUC could not investigate the prudence of Equitable's purchases because to do so would invade the exclusive jurisdiction of the Federal Energy Regulatory Commission (FERC) to set the rates at which Kentucky West would sell its gas at wholesale. No argument was made before this court that the $14.3 million in purchased gas costs represented any minimum bill liability imposed on Equitable by its contract with Kentucky West. "Minimum bill contracts" are intended "to guarantee a long term supply of gas." *Kentucky West I*, 837 F.2d at 609 n. 7. Under the contract in effect at the time of the 1985 PUC determination, the clause required Equitable "to pay for a specified percentage (66 and ⅔%) of its total contractual entitlement, regardless of actual consumption." *Id*. This minimum commodity bill had been approved by the FERC along with the rest of the provisions of Equitable's contract with Kentucky West.

Despite its contractual obligation, during the time period covered by the 1985 section 1307(f) rate filing, July of 1983 through December of 1984, Equitable had unilaterally stopped paying for gas it was not actually taking from Kentucky West, thereby suspending its minimum bill liability for this period. It was negotiating with Kentucky West for a settlement of those

because we will rely upon evidence outside the complaint, we will treat the motion to dismiss as a motion for summary judgment. Plaintiffs

have taken the opportunity in their opposition brief to supply affidavits so they should not be prejudiced by our choice in this regard.

charges but no agreement was reached during the PUC consideration and eventual disposition by order of August 31, 1985, of Equitable's section 1307(f) rate filing. Nor had agreement been reached by the time the complaint had been filed in this court challenging the 1985 PUC order. Plaintiffs allege that a settlement was eventually reached and that the FERC approved it on November 13, 1985.[2] The settlement: (1) revised Equitable's minimum bill liability downward from 66 and $\frac{2}{3}\%$ to 55% for July 1, 1983 through July 31, 1984; (2) established the 55% ratio for July 1, 1983 through February 29, 1984; and (3) required Equitable to pay carrying charges on minimum bill deficiencies from March 1, 1984 through July 31, 1984. The settlement also gave Equitable the right to future redelivery of gas from January 1, 1985 until December 31, 1988. In the meantime, this court had abstained from entertaining plaintiffs' challenge to the PUC action, was reversed, and eventually held a hearing on the merits on August 21, 22 and 28 of 1986. *See* 650 F.Supp. at 661.

Subsequent section 1307(f) proceedings occurred in 1986 and 1987. No claim relating to the $14.3 million was made in 1986. In the 1987 proceeding, Equitable based its rate adjustment request, in part, on the fixed commodity charge of $2.5 million of minimum bill liability incurred during the eighteen months ending in December of 1984. By order, dated August 31, 1987, the PUC allowed recovery of this expense.

On March 1, 1988, Equitable instituted another section 1307(f) proceeding in which it sought recovery of $10.2 million "for the minimum bill costs approved by the FERC represent[ing] the variable cost ... portion of Kentucky West's minimum bill ... which Equitable was obligated to pay under the FERC approved settlement agreement." (complaint, ¶ 26) (brackets added).

On September 1, 1988, the PUC disallowed the claim, reasoning, in part, as follows:

> Equitable seeks recovery of a hypothetical variable cost minimum bill payment that it never actually made to its pipeline supplier.[3] This claim is appropriately denied first, because it does not constitute a cost actually incurred and paid. Second, the 1987 Section 1307(f) case compensated Equitable for the minimum bill liability with Kentucky West. Equitable has not cited any new events or changed circumstances that have arisen since it claimed and recovered Kentucky West minimum bill costs from 1983–1984 in its 1987 gas cost recovery proceeding that warrants allowance of a new and different minimum bill amount. *This is an effort to relitigate an issue already settled in the absence of new evidence or changed circumstances.*

(PUC brief in support of motion to dismiss, Attachment B at p. 12) (emphasis added) (footnote added).

While appealing this determination to the Pennsylvania Commonwealth Court, Equitable also filed the instant lawsuit challenging the 1988 PUC order on the basis of: (1) the supremacy clause,[4] the filed rate doctrine,[5] the due process clause of the fourteenth amendment[6] and the taking clause.[7]

*Discussion.*

Defendant contends that claim preclusion bars the instant action because plaintiffs could have raised the same claim but did not do so: (1) in the proceedings in this court in August of 1986 following the Third Circuit's remand in *Kentucky West I*, or in its federal challenge to the 1986 PUC order dealt with in *Kentucky West II*, or (2) in its 1986 and 1987 section 1307(f) administrative proceedings before the PUC.

---

**2.** Actually, October 25, 1985 is alleged in the complaint but plaintiffs' affidavits and defendant's brief agree on the November date.

**3.** Plaintiffs allege that Equitable did, in fact, pay this money. We will assume that it did. The issue, in any event, is not material to a disposition of the motion.

**4.** U.S. Const. art. VI, cl. 2.

**5.** *See Kentucky West I, supra,* 837 F.2d at 606.

**6.** U.S. Const. amend. XIV.

**7.** U.S. Const. amend. V.

*The Federal Court Lawsuits.*

■ Defendant's reliance upon the proceedings in this court in *Kentucky West I* is misplaced. The hearings we held in that action were based upon the complaint filed on October 11, 1985. The events forming the basis of that complaint, the PUC proceedings leading up to its order of August 31, 1985, occurred prior to the FERC approval of the settlement on November 13, 1985. Those proceedings specifically did not deal with minimum bill liabilities. Negotiations were still ongoing to modify Equitable's liability in that regard. Thus, the cause of action giving rise to the complaint before us could not have included any minimum bill issues and claim preclusion could not have applied.

This result is supported by *Purter v. Heckler,* 771 F.2d 682, 689–90 (3d Cir.1985) (footnote omitted) in which the Third Circuit stated:

> *Res judicata,* or claim preclusion, is a court-created rule that is designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand....
>
> In order to raise successfully the defense of *res judicata,* the party asserting the defense must demonstrate that (1) there has been a final judgment on the merits in a prior suit; (2) the prior suit involves the same parties or their privies and (3) the subsequent suit is based on the same causes of action. *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984).... This court has suggested three considerations relevant to the inquiry into whether there is identity of causes of action: "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions....); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial

are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first) ... and (4) whether the material facts alleged are the same." *Id.* (citations omitted).

In the instant case, three of the four factors to be considered in determining whether the causes of action are the same have not been satisfied. First, the acts complained of are not the same. Necessarily, plaintiffs could not have raised minimum bill liability claims prior to the settlement approval.[8] Second, the witnesses and documents would not be the same. For example, the settlement agreement was not in existence at the time of the federal complaint. Finally, the material facts are not the same.

We reject defendant's contention that plaintiffs could have litigated the effect of the settlement agreement in the *Kentucky West I* district court proceedings because by the time of our hearings in August of 1986 following remand, plaintiffs could have presented evidence concerning the settlement's effect on minimum bill liabilities. It seems to us that plaintiffs only had to prosecute the cause of action pleaded in the complaint. While it may have been preferable, there was no duty to amend the complaint to litigate the subsequent settlement agreement.[9]

*The PUC Proceedings Subsequent to 1986.*

■ We must look to state law to determine the claim preclusive effect of the subsequent section 1307(f) proceedings. *See Kentucky West I, supra,* 837 F.2d at 611; *National Railroad Passenger Corp. v. Pennsylvania Public Utility Commission,* 665 F.Supp. 402, 406 n. 8 (E.D.Pa.1987), *aff'd on other grounds,* 848 F.2d 436 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 231, 102 L.Ed.2d 220 (1988). Pennsylvania will apply claim preclusion to administrative agency decisions.

---

**8.** Plaintiffs did press the minimum bill issue on appeal in *Kentucky West I* but were properly rebuffed by the Third Circuit on the basis that the issue had not been litigated below.

**9.** Because of our conclusion below, we will not discuss the effect of plaintiffs' failure to raise the issue in the 1986 federal district court proceedings.

[T]he application of res judicata principles is not precluded merely because administrative proceedings are involved and where an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate the courts will not hesitate to apply res judicata principles.

*Philadelphia Electric Co. v. Borough of Lansdale,* 283 Pa.Super. 378, 392, 424 A.2d 514, 521 (1981) (brackets added) (citing *United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

The PUC was acting in a judicial capacity in the section 1307(f) proceedings. Equitable was represented by counsel, testimony was taken and factual determinations within the province of the PUC's jurisdiction were made, i.e., whether purchased gas costs during the pertinent reconciliation periods were prudently incurred. The PUC has also recognized the applicability of the filed rate doctrine to its proceedings.

We therefore look to the following standard:

Pennsylvania requires a concurrence of four conditions before claim preclusion can apply. The two actions must share an identity of the (1) thing sued on; (2) cause of action; (3) persons and parties to the action; and (4) quality or capacity of the parties suing or sued. *Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 105, 415 A.2d 53, 56 (1980); *Bearoff v. Bearoff,* 458 Pa. 494, 497, 327 A.2d 72, 74 (1974). *See also Harris v. Pernsley,* 755 F.2d 338, 342 (3d Cir.), *cert. denied,* 474 U.S. 965, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985); *Davis [v. U.S. Steel Supply ],* 688 F.2d [166] at 170 [3rd Cir.1982].

*Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988).

We believe that the claim in the 1988 section 1307(f) proceedings for $10.2 million in variable commodity costs shares an identity with the thing sued on in the 1986 administrative proceedings. It is also the same cause of action. Equitable initiated the 1986 proceedings on February 28, 1986, and, pursuant to the statutory and regulatory scheme,[10] sought an adjustment of its rates for a twelve month reconciliation period ending not less than two months prior to the date of filing. This period would have included October of 1985, the time when the settlement would have been approved by the FERC and the last possible period when Equitable's minimum bill liability for July of 1983 through December of 1984 would have been arguably uncertain. Having filed a section 1307(f) petition covering this reconciliation period and having omitted a claim which could have been argued, but which was not, Equitable would now be foreclosed by a state court from litigating the issue.[11] We must do likewise. *See Gregory, supra,* 843 F.2d at 116 ("Claim preclusion prevents a party from prevailing on issues he might have but did not assert in the first action.") (citing Pennsylvania law).

The same conclusion applies to the 1987 administrative proceedings. In those proceedings, Equitable did make a claim for $2.5 million, representing the fixed portion of the commodity charge incurred during the 1983–84 period and the PUC did allow the expense in setting Equitable's rates. But no claim was made for the $10.2 million. It has therefore been waived. *See Jost v. Phoenixville Area School District,* 119 Pa.Commw. 477, 484, 547 A.2d 830, 833 (1988) ("A judgment is res judicata not only as to damages actually claimed but also as to those which could have been sought.").

We reject plaintiffs' argument that the waiver was actually on the part of the PUC. Their reliance upon *Purter v. Heckler, supra,* and *Coup v. Heckler,* 834 F.2d 313 (3d Cir.1987), in this regard is misplaced. Those social security disability cases do stand for the general proposition that an agency waives res judicata when it de facto reopens previous administrative decisions and reviews the entire record on the merits. But that did not happen in the 1987 PUC proceedings. Equitable pressed

---

**10.** *See* 52 Pa.Code § 53.61—53.68.

**11.** The third and fourth criteria are also satisfied here.

its claim only for $2.5 million and claim preclusion was waived only as to that issue. The PUC could have rejected even this claim on claim preclusion grounds because it could have been raised, but was not, in the 1986 administrative proceedings.

*Purter* and *Coup* are further distinguishable because they dealt with the merits of the administrative proceeding in which the agency waiver had occurred. Conversely, the instant case does not involve the 1987 PUC decision; rather, the 1988 section 1307(f) petition in which Equitable made a claim for the first time for the $10.2 million. Any waiver of the defense of claim preclusion—and only then it would have been applicable solely to the $2.5 million claim—could only have been invoked as to the 1987 proceedings. Claim preclusion could still have been relied upon in the 1988 proceedings.

In applying claim preclusion here, we recognize that the PUC proceedings at issue involve rate making, traditionally not considered an area of administrative law where claim preclusion should apply. The PUC itself has stressed the flexible nature of the rate making process in that successive section 1307(f) proceedings take into account historical as well as projected costs. But we agree with the PUC that, at some point in time, rate making predicated upon certain historical and ascertainable costs can be made subject to claim preclusion principles.[12] The PUC in setting rates need not consider costs in years past which could have been, but were not, raised in prior administrative proceedings. It must also be borne in mind that the regulatory scheme at issue here contemplates looking backward only a certain period of time. In short, while claim preclusion does not have to be as rigidly applied in administrative proceedings as in judicial ones, "when the reasons for uses of the rule in court pro-

ceedings are present in full force," *Atlantic Richfield Co. v. City of Bethlehem*, 69 Pa.Commw. 6, 12, 450 A.2d 248, 252 (1982) (quoting *City of McKeesport v. Public Utility Comm'n*, 65 Pa.Commw. 179, 182, 442 A.2d 30, 31 (1982)), the doctrine should be invoked.

We will issue an appropriate order.

## ORDER AND JUDGMENT

AND NOW, this 27th day of April, 1989, upon consideration of defendant's motion to dismiss, treated as a motion for summary judgment, it is ordered that:

1. The motion is granted.

2. Judgment is hereby entered in favor of defendant and against plaintiffs.

3. The motion of the proposed intervenor, the Consumer Advocate of Pennsylvania, to intervene is dismissed as moot.

4. Plaintiffs' request for oral argument is denied.

5. The Clerk of Court shall close this file and the scheduling conference noticed for May 3, 1989 is cancelled.

## ON MOTION FOR RECONSIDERATION AND REHEARING

I. *Introduction and Procedural Background.*

Plaintiffs, Kentucky West Virginia Gas Co. and Equitable Gas Company (Equitable), have filed a timely motion, pursuant to Fed.R.Civ.P. 59(e), for reconsideration and rehearing, seeking vacatur of our order, dated April 27, 1989, granting summary judgment in favor of defendant, Pennsylvania Public Utility Commission (PUC), on claim preclusion grounds. *See* memorandum, dated April 27, 1989 page 712. This memorandum assumes a familiarity with our previous one which accompanied the summary judgment order.

We also reject plaintiffs' argument that Equitable's liability under the settlement agreement could not be fixed until December of 1988 since it had a right to redelivery of gas up to that time. This right has no affect upon the costs already incurred in the 1983–84 period.

---

**12.** We are otherwise not persuaded by the plaintiffs' brief which concentrates on showing that res judicata would not apply to the 1985 section 1307(f) proceedings or that collateral estoppel (issue preclusion) does not bar their claim. As defendant points out, its motion is not predicated upon either of these grounds.

■ We address a procedural issue first. The motion should have been styled as one to alter or amend. *See Lovelace v. Acme Markets, Inc.,* 820 F.2d 81, 83 n. 2 (3d Cir.1987). On that basis, defendant argues that our review of the motion is limited to determining whether we committed a manifest error of law or fact or to a consideration of newly discovered evidence. *See Harsco Corp. v. Zlotnicki,* 779 F.2d 906 (3d Cir.1985). Thus, defendant argues that we cannot consider the newly submitted affidavit of Stuart G. McDaniel since plaintiffs have not shown why they could not have presented it prior to our disposition of the PUC's motion. We think, however, as plaintiffs have argued in their reply brief, that our failure to give ten days notice of our intention to enter summary judgment requires us to consider plaintiffs' position in its entirety without consideration of a narrower standard of review that might normally be applied to a Rule 59(e) motion.

By way of background, defendant had moved to dismiss pursuant to Rule 12(b)(6) but had attached as exhibits to its supporting brief the PUC opinions and orders dealing with Equitable's section 1307(f) proceedings in 1987 and 1988. We relied upon those exhibits in deciding that claim preclusion barred the instant action. Therefore, rather than simply dismiss the complaint, we entered summary judgment. We were mindful of potential prejudice to plaintiffs from a decision to enter judgment on the merits, and we did so only after noting that plaintiffs had "taken the opportunity in their opposition brief to supply affidavits," *see* memorandum, dated April 27, 1989, at 711 n. 1, so that prejudice did not appear to be a consideration.

Fed.R.Civ.P. 12(b) permits the conversion of a 12(b)(6) motion to a summary judgment one as long as the court gives "all parties ... reasonable opportunity to present all material made pertinent to such a motion by Rule 56." As noted, plaintiffs did present such material. Fed.R.Civ.P. 56(c) also provides, in pertinent part, that a summary judgment motion "shall be served at least 10 days before the time fixed for the hearing." The proceedings on defendant's motion and its disposition were not in apparent conflict with these two rules.

The Third Circuit, however, has interpreted the interplay of these rules to require a district court to give ten days notice of its intent to enter a summary judgment when it converts a Rule 12(b)(6) motion into a Rule 56 motion. *See Crown Central Petroleum Corp. v. Waldman,* 634 F.2d 127 (3d Cir.1980). The court "has insisted on strict compliance with the procedural requirements" of Rule 56(c), *Brooks v. Hussman Corp.,* 878 F.2d 115, 116–17 (3d Cir.1989), and has reversed orders granting summary judgment when the district court failed to give the requisite ten day notice of its intention to enter a summary judgment.

The PUC has taken the reasonable position that our error was harmless. Defendant is probably correct. As noted, plaintiffs submitted Rule 56 materials on their own, the three affidavits and four exhibits filed in opposition to the defendant's motion to dismiss. This material directly attacked the claim preclusion defense. At that time plaintiffs argued in their opposition brief to the 12(b)(6) motion that the "relevant facts and circumstances, as shown by the Complaint and the Affidavits and Exhibits accompanying this document, as well as applicable legal standards, make clear that neither *res judicata* nor collateral estoppel can be applied to dismiss this action." (opposition brief, pps. 3–4). Plaintiffs made no argument for an extension of time or that the material was incomplete. Rather, they impliedly represented that they were able to present all the material that they wanted. In addition, plaintiffs did not raise the Rule 56(c) issue in their motion for reconsideration or in their supporting brief, presenting it for the first time only in their reply brief. Accordingly, it hardly seems likely that plaintiffs were prejudiced by our entry of summary judgment. *Cf. Conley v. Board of Trustees,* 707 F.2d 175, 178 n. 2 (5th Cir.1983) (failure to argue before the trial court in its motion to alter or amend that party had been prejudiced by failure to comply with Rule 56(c) belies an argument on appeal that prejudice occurred). Moreover, the reply brief argues only the failure to give notice,

not that the plaintiffs did not have adequate time to submit all evidentiary material in opposition to defendant's motion. It would appear then that the purpose of Rule 56(c) to permit a party an opportunity to demonstrate the presence of a dispute of material fact had been fulfilled here. *See Brooks, supra. Compare Crown Central, supra* (a summary judgment entered on count II of a complaint following a preliminary injunction hearing held only on count I violated Rule 56(c)).

Nevertheless, we accept plaintiffs' Rule 56(c) argument here. Defendant did not, as it is sometimes done, alternatively seek summary judgment. Our April 27th order was the first notice plaintiffs received that a judgment on the merits would be entered. It is not enough that the nonmoving party had an opportunity to present some arguments relevant to a disposition under Rule 56. The notice requirement would appear to be equally important. *See Crown Central, supra,* 634 F.2d at 129 ("Appellant was afforded *neither notice* nor an opportunity to present affidavits in support of its antitrust claim."). (emphasis added). It is essential that the nonmoving party know it is at risk of a judgment on the merits. In *Crown Central, supra,* the Third Circuit, noting "the importance of notice in summary judgment proceedings" and stating its intention to "stand by our strict adherence to this procedural safeguard," 634 F.2d at 129 (footnote omitted), stated, in part, that the ten day notice requirement "provides an opportunity for the opposing party to prepare himself *as well as he can,"* that the additional time should "produce a well-prepared and *complete presentation,"* and that the additional time is needed to assure fairness "since the results of failure are drastic." *Id.* at 129 n. 7 (quoting 10 C. Wright and A. Miller, Federal Practice and Procedure § 2719 (1973)) (our emphasis).

In the instant case, plaintiffs have presented us in their motion for reconsideration with new arguments on the claim preclusion defense and a new affidavit. They have also argued, albeit somewhat belatedly, our violation of Rule 56(c). In these circumstances, we believe we should consider all their arguments and the sup-

plementary affidavit under a summary judgment standard of review. Procedural limitations relevant to the typical motion to alter or amend will not be applied. The situation is similar to *Finn v. Gunter,* 722 F.2d 711 (11th Cir.1984). In *Finn,* the defendant-appellee had filed a Rule 12(b)(6) motion with attached exhibits. Plaintiff opposed the motion and supplied his own exhibits. The district court then entered a partial summary judgment without giving the Rule 56(c) notice. Reversing, the eleventh circuit stated:

> Appellee argues that Finn has already provided everything that he could. Appellant says that there is additional material that can and will be filed. What is important is that Finn be given an opportunity to present every factual and legal argument available.

*Id.* at 713 (footnote omitted).

This reasoning is in accord with *Crown Central.* We turn now to the merits of plaintiffs' motion for reconsideration.

## II. *Discussion.*

### A. Agency Practice In Regard to Claim Preclusion.

Plaintiffs first argue that defendant itself has taken the position that claim preclusion does not apply to section 1307(f) proceedings. They cite in support of this position *PUC v. The Peoples Natural Gas Co.,* 62 PaPUC 56 (1986) (Peoples I) and *PUC v. The Peoples Natural Gas Co.,* 65 PaPUC 16 (1987) (Peoples II). Plaintiffs relied upon *Peoples I* in their opposition brief to defendant's motion to dismiss. We did not refer to it in our memorandum and plaintiffs' motion for reconsideration makes a pointed reference to our failure to do so. The motion, like the brief, quoted only the following language from *Peoples I:*

> [We] conclude that this doctrine [*res judicata*] is simply not applicable in 1307(f) proceedings ... Our reading of Section 1307(f) shows a clear Legislative intent that the costs underlying Section 1307(f) rates are never "cast in stone" and may be questioned in a subsequent

Section 1307(f) proceeding. This conclusion is also consistent with the "least cost procurement policy" mandated by Section 1307(f).

(plaintiffs' opposition brief at p. 4; plaintiffs' motion for reconsideration, ¶ 2). (brackets added by plaintiffs).

In referring to this administrative decision, plaintiffs omitted not only a discussion of the factual context of the PUC's statement but also a crucial part of the quotation. The complete quotation, with the omitted portion underlined, reads as follows:

[W]e conclude that this doctrine is simply not applicable in 1307(f) proceedings, *other than possibly after the Commission has issued an Order under Section 1307(f)(5) after reaching its determinations (reconciliation) regarding projected versus actual historic costs.* Our reading of Section 1307(f) shows a clear Legislative intent that the costs underlying Section 1307(f) rates are never "cast in stone" and may be questioned in a subsequent Section 1307(f) proceeding. This conclusion is also consistent with the "least cost procurement policy" mandated by Section 1307(f).

62 PaPUC at 64.

The PUC thus was not rejecting claim preclusion out of hand. It clearly recognized the doctrine but merely decided not to invoke it in the circumstances before it, the consideration of an interlocutory appeal from a decision of an administrative law judge (ALJ) prohibiting the testimony of an expert on behalf of the Office of Consumer Advocate. The expert would have testified to excessive contract demand by Peoples' affiliated intrastate gas supplier. The ALJ excluded the testimony on res judicata grounds despite its relevance to the reconciliation period involved in the section 1307(f) rate then under review. The ALJ's decision was based upon the PUC's allowance of the costs prospectively in Peoples' initial section 1307(f) proceedings when only future projections of gas costs were available. The PUC rejected this position, noting that the expert was simply adjusting for contract demand for the previously projected period of September 1, 1985 through August 31, 1986. This was a period subject to reconciliation under the statutory scheme in the then current section 1307(f) proceedings. It was thus clear that claim preclusion had no application.

Plaintiffs' reliance upon *Peoples II* is even more strained. They merely quote broad language of the PUC from that administrative decision to the effect that "[g]as cost proceedings under § 1307 are evolutionary" and that "costs underlying Section 1307(f) rates are never 'cast in stone.'" (plaintiffs' brief in support of reconsideration at p. 6) (brackets added). We can agree with these isolated statements without necessarily concluding that the PUC has rejected claim preclusion in Section 1307(f) proceedings.

Plaintiffs have also submitted the affidavit of Stuart G. McDaniel. Mr. McDaniel asserts, in relevant part, that:

1. The PUC has in the past "permit[ted] Pennsylvania utilities to amortize certain expenses over a period of several years in order to mitigate the impact on customer rates.... That PUC practice appears to be no different than what occurred when Equitable sought to 'spread out' its minimum bill liabilities over a two year period to minimize the impact on its customers." (McDaniel affidavit, ¶ 7) (brackets added).

2. Section 1307(f) did not change the established flexibility a utility had in timing a pass through of costs. An example would be the PUC decision in Equitable's 1988 section 1307(f) proceedings requiring Equitable to defer collection of certain purchased gas costs. (¶ 8).

3. A utility is not required by Pennsylvania law or by the PUC to seek recovery of costs at the earliest possible time. (¶ 8).

4. Equitable's timing of its request for a pass through of the variable costs at issue in the instant case and of its fixed costs was consistent with PUC practices. (¶¶ 9, 10).

Plaintiffs are not aided by Mr. McDaniel. Some of his allegations are purely legal ones which have also been argued in plaintiffs' brief. Others establish that the PUC

often decides when a utility shall recover its costs or how long the recovery will take. None of them support the proposition that a utility may unilaterally decide the timing of its submission of a claim for purchased gas costs and require the PUC to consider that claim on the merits, the crucial issue identified in plaintiffs' opposition brief to defendant's motion. (opposition brief at p. 2).

B. The Impact of Statutory Authority Conferring Power Upon the PUC to Review And Amend Orders And to Order Refunds.

■ Plaintiffs cite several statutory sections conferring authority upon the PUC generally to revise or amend orders or to order refunds of revenue collected under any unjust, unreasonable or unlawful rate. Plaintiffs contend that this flexibility makes claim preclusion inapplicable to PUC proceedings.

The first section cited is 66 Pa.C.S. § 1312(a) which provides, in pertinent part, as follows:

> If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within four years prior to the date of the filing of the complaint. . . .

Plaintiffs have merely cited this section without supplying any case law interpret-

ing it in relation to the claim preclusion doctrine. We hesitate to view this section alone as precluding a claim preclusion defense in the instant case, in light of the interpretations placed upon another statutory section relied upon by plaintiffs and the case law, both discussed below, directly applying claim preclusion to administrative agency decisions.[1]

Plaintiffs point to 66 Pa.C.S. § 703(g) in further support of their argument that claim preclusion is inapplicable to the statutory scheme. Section 703(g) provides, in pertinent part, that: "[t]he Commission may, at any time, after notice and opportunity to be heard as provided in this chapter rescind or amend any order made by it." (brackets added). Plaintiffs cite *In re Peoples Natural Gas Co.*, 358 N.W.2d 684 (Minn.Ct.App.1984), *aff'd*, 389 N.W.2d 903 (Minn.1986), which characterized a similar Minnesota provision, as "alter[ing] the traditional res judicata principles." *Id.* at 689 (brackets added).

We refuse to rely upon this Minnesota case. It is more important to look to Pennsylvania cases construing section 703(g). Significantly, the Pennsylvania Supreme Court has interpreted section 703(g) in a manner at odds with the Minnesota Court of Appeals. We must, of course, look to the highest court in Pennsylvania in interpreting a Pennsylvania statute rather than an intermediate appellate court of a foreign state.[2] In *City of Pittsburgh v. Pennsylvania Department of Transportation*, 490 Pa. 264, 416 A.2d 461 (1980), the Pennsylvania Department of Transportation (PennDOT) petitioned the PUC pursuant to 66 P.S. § 1397, a substantively similar predecessor section to section 703(g), to reopen the record of a proceeding which had resulted in a PUC order on January 15, 1974,

---

1. This conclusion applies as well to 66 Pa.C.S. §§ 1307(d) and (f), which plaintiff also contends establishes the lack of finality in PUC orders. We would also cite *Peoples I* as illustrating the danger of looking to the statutory sections alone. In *Peoples I*, the PUC, despite the statutory language, said claim preclusion would possibly apply to section 1307(f) proceedings after the reconciliation period.

2. In any event, we reject the plaintiffs' interpretation of *Peoples Natural Gas Co.* That case did not "altogether . . . preclude", claim preclusion in agency decisionmaking, as plaintiffs contend (plaintiffs' brief in support of reconsideration at p. 12). Rather, the court said only that the agency was "not bound to rigid adherence to precedent." 358 N.W.2d at 689. (quoted case omitted). The case therefore left some room for claim preclusion in the administrative setting.

allocating the expense of constructing a bridge between the City of Pittsburgh, Allegheny County and PennDOT. The costs were certified on October 30, 1974, and a fixed sum allocated to PennDOT in accordance with the order of January 15, 1974. PennDOT had not directly appealed the certification of costs. Acting on the section 1397 motion, the PUC, on July 21, 1976, clarified its January 15th order and reduced PennDOT's allocated costs somewhat. On appeal, one issue concerned the date from which interest ran on PennDOT's obligation, the date of the original certification or the date of the amended certification. In dealing with the issue, the supreme court stated in pertinent part:

> PennDOT's petition to open the record, filed to challenge some of the costs billed by the City, was neither an appeal, nor a petition for a rehearing, but instead a petition to amend or modify the certification pursuant to § 1007 of the Public Utility Code [66 P.S. § 1397]. By the terms of that provision, the PUC has the power to amend or rescind its own orders at any time subject only to the requirements of due process. *Department of Highways v. Pa. P.U.C.*, 185 Pa.Super. 418, 138 A.2d 143 (1958). *Because such relief may result in disturbance of final orders, it must be granted judiciously and only under appropriate circumstances.*
>
> After a public hearing, the PUC concluded "the intent of our order was misconstrued by both the department and the city, albeit with understandable reason, and should be clarified." ...
>
> We may not disturb the PUC's determination that the misunderstanding regarding its January 15, 1974 order was such *as to merit the extraordinary relief granted in its order of July 21, 1976.*

*Id.* at 270–71, 416 A.2d at 465 (emphasis and brackets added) (footnotes omitted).

3. Plaintiffs also cite *Department of Highways v. PUC*, 185 Pa.Super. 418, 138 A.2d 143 (1958) in their support but changed circumstances supported the court's decision in that case.

4. We also note that plaintiffs cite *PUC v. Duquesne Light Co.*, 63 PaPUC 337 (1987). That

The Pennsylvania Supreme Court thus implicitly recognizes claim preclusion in the section 703(g) setting. Indeed, its reference to "extraordinary relief" echoes the Third Circuit standard for granting relief pursuant to the somewhat similar Fed.R. Civ.P. 60(b)(6). *See Stradley v. Cortez*, 518 F.2d 488 (3d Cir.1975) (Rule 60(b)(6) applies only to exceptional circumstances calling for extraordinary relief). Yet plaintiffs would hardly argue that the existence of Rule 60(b)(6) renders any order or judgment of a district court so non-final that claim preclusion would not apply.

We must admit, however, that lower Pennsylvania courts have apparently not shown the same sensitivity to the issue that the supreme court has. Thus, in *Pittsburgh & Lake Erie Railroad Co. v. PUC*, 66 Pa.Commw. 609, 445 A.2d 851 (1982), the commonwealth court upheld a PUC order modifying a 1969 agency order and shifting part of the cost of maintaining a railroad bridge's wooden deck to the complaining parties. The court relied upon the literal language of section 703(g) and expressly stated that new evidence was not necessary to modify the previous order, only notice and opportunity to be heard as provided by section 703(g).[3] We are, nevertheless, not persuaded by this case when the commonwealth court has elsewhere adopted claim preclusion principles.[4]

**C. Case Law.**

■ Plaintiffs contend that we ignored three principles of Pennsylvania law dealing with claim preclusion. First, they allege that any order to be given that effect must be final in the sense that it is "forever, and under all circumstances, final and conclusive as between the parties," quoting *Philadelphia Electric Co. v. Borough of Lansdale*, 283 Pa.Super. 378, 389, 424 A.2d 514, 519 (1981). This quotation, like others

administrative decision spoke only in dictum, and only in the most general terms of the power conferred upon the PUC to revoke or amend an order pursuant to section 703(g). *Id.* at 425, 138 A.2d 143. It does not aid plaintiffs in support of its position on section 703(g).

in plaintiffs' briefs, has been removed from context. The full quote is:

When a court of competent jurisdiction has determined a litigated case on its merits, the judgment entered, *until reversed*, is, forever, and under all circumstances, final and conclusive as between the parties to the suit....

*Id.* at 389, 424 A.2d at 519 (quoting *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 498, 327 A.2d 72, 75 (1974)) (our emphasis). The PUC order in the 1987 section 1307(f) proceedings meets this requirement. No appeal was taken from this order. It therefore remains final.

Second, plaintiffs argue that claim preclusion "is properly applied only as to a final order that might properly have been entered." (plaintiffs' brief in support of motion for reconsideration at p. 14). This argument has not been pursued further and we have no idea what it means.

Third, plaintiffs, quoting selectively from *Atlantic Richfield Co. v. City of Bethlehem*, 69 Pa.Commw. 6, 450 A.2d 248 (1982), argue that claim preclusion is " 'sparingly' applied in situations such as that presented here, where 'continuing regulation and [agency] flexibility ... outweigh the risk of repetitive litigation.' " (plaintiffs' brief in support of reconsideration at p. 14) (quoting *Atlantic Richfield Co.*, 69 Pa.Commw. at 12, 450 A.2d at 252) (brackets in plaintiffs' brief). Actually, the commonwealth court said claim preclusion should be sparingly applied in *zoning* cases because "zoning is a continuing regulation and flexibility in zoning matters outweighs the risk of repetitive litigation." 69 Pa.Commw. at 12, 450 A.2d at 252. (quoted treatise omitted). Clearly, this aspect of the case has application only to zoning cases.

Plaintiffs also attempt to distinguish *City of McKeesport v. PUC*, 65 Pa. Commw. 179, 442 A.2d 30 (1982), because in that case, unlike here, the issue had been litigated before the agency. That distinction is irrelevant. As we noted in our prior memorandum at pages 11 and 12, claim preclusion will apply to matters that could have been raised, but were not, in a prior proceeding.

We think the cases cited by plaintiffs take from the plaintiffs as much as they give—if they give anything at all. For example, as noted immediately above, plaintiffs have cited *Atlantic Richfield* to support their claim that we erroneously applied claim preclusion here. But that case only said that claim preclusion had to be applied *sparingly* in *zoning* cases. Contrary to plaintiffs' assertion, the court did not entirely rule out the use of the doctrine in such cases. Referring to an apparent split of Pennsylvania authority on the use of claim preclusion in the administrative setting, the court stated that "[i]t would seem that the better rule is that expressed by Judge Rogers in *McKeesport* that 'the use of the doctrine of res judicata in administrative proceedings is proper when the reasons for uses of the rule in court proceedings are present in full force.' " *Id.* at 12, 450 A.2d at 252 (quoting *McKeesport, supra*, 65 Pa.Commw. at 182, 442 A.2d at 31). The court then remanded the case, not with directions that the Zoning Board not apply claim preclusion, but so that the Board could make findings of fact and conclusions of law from which it could be determined if claim preclusion should be applied in the case.

Reliance upon *Peoples I, supra*, and *Peoples II, supra*, is equally misplaced. These administrative decisions, rather than showing that claim preclusion is foreign to the administrative process, illustrate that it is a familiar doctrine in that context, invoked not only by the PUC but also by the litigants, including the regulated utilities. Thus, in *Peoples I* the PUC discussed the doctrine in connection with the ALJ's acceptance of a res judicata argument made by the utility which resulted in the exclusion of certain expert testimony. Significantly, the agency did not simply reject claim preclusion as being inapplicable to administrative proceedings. Rather, it concluded after a substantive discussion that claim preclusion was inapplicable to the particular situation before it.

This leads to plaintiffs' argument that it is somehow inequitable to invoke claim preclusion to bar Equitable's claim. We fail to

see any inequities here. Case law from at least 1981 put Equitable on notice of the applicability of claim preclusion to administrative proceedings. *See Philadelphia Electric Co. v. PUC,* 61 Pa.Commw. 325, 433 A.2d 620 (1981); *McKeesport, supra, Atlantic Richfield, supra. Philadelphia Electric* held that claim preclusion "may be a bar to the relitigation of an issue based on immutable facts and circumstances" in administrative proceedings before the PUC. 61 Pa.Commw. at 335, 433 A.2d 620. In the instant case, as noted in our prior memorandum at pp. 713 and 715, Equitable's variable minimum bill liability became fixed in November of 1985. Equitable was therefore at risk of waiving this claim if it was not raised in a timely fashion.

 We reject plaintiffs' other arguments. It is irrelevant that neither the PUC nor pertinent statutes or regulations required Equitable to make a claim for the $10.2 million in variable costs. Case law imposed that requirement. It also does not matter that plaintiffs' timing of the claim for the purposes of amortizing the cost to ratepayers was supposedly proper. We deal here with a different issue, the timing of presenting a claim to the PUC. It is the agency's jurisdiction to determine when costs can be recovered from the ratepayers, not the utility's. In this regard, our prior order did not violate the mandate of *Kentucky West II, Kentucky West Virginia Gas Co. v. PUC,* 862 F.2d 69 (3d Cir. 1988). That case did not deal with claim preclusion, only with the timing of the pass-through of timely made claims.

Finally, we also correct some factual misstatements by the plaintiffs. They assert that 66 Pa.C.S. § 1307(f)(2) "expressly provides that Section 1307(f) proceedings are not final." (plaintiffs' memorandum in support of reconsideration at p. 3 n. 4). Section 1307(f)(2) says no such thing. Plaintiffs also contend that we erroneously relied upon the claim for fixed costs in the 1987 section 1307(f) proceedings to conclude that Equitable had waived its claim

for the variable costs. We did not do that. Rather, the failure to raise the variable costs claim itself in the 1987 proceedings, aside from the claim actually made for the fixed costs, was sufficient waiver. We expressly noted that even the claim for fixed costs could have been rejected because it was not raised in the 1986 section 1307(f) proceedings.[5] (see memorandum, dated April 27, 1989, pps. 715–16).

We will issue an appropriate order.

### ORDER

AND NOW, this 6th day of September, 1989, upon consideration of plaintiffs' motion for reconsideration and hearing, it is ordered that the motion is denied.

---

**5.** Accordingly, we reject plaintiff's argument that the PUC's consideration of the fixed costs claim in 1987 acted as a waiver of claim preclu-

sion in the 1988 proceedings involving the variable costs claim.